IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RUSSELL ZIEBELL,

                                                            OPINION AND ORDER

                Plaintiff,

                                                             08-cv-281-bbc

      v.

CRAIG DEANE
and QAI, LLC,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Russell Ziebell is suing defendants Craig Deane and QAI, LLC, alleging that defendant Deane promised plaintiff he would be a 35% owner of defendant QAI, LLC. Defendant Deane denies that he made any such promise. Plaintiff is seeking money damages for breach of contract, unjust enrichment and promissory estoppel.

      The case is before the court on defendants' motion to dismiss for lack of personal jurisdiction over defendants or, in the alternative, to transfer venue to the Southern District of Indiana under 28 U.S.C. § 1404(a). Defendants contend that this court cannot exercise jurisdiction over them under Wisconsin law and the due process clause of the United States Constitution and that even if it could, the convenience of the parties and the interests of justice warrant a transfer of the case. I conclude that personal jurisdiction exists but that this

1

is one of the rare cases in which a transfer to defendants' preferred district is appropriate.

The following facts are taken from the parties' affidavits and are not in dispute.

JURISDICTIONAL FACTS

Defendant Craig Deane is a citizen of Indiana and the sole member and owner of QAI Training, LLC, an Indiana limited liability company he organized in 1999.  The company provides training programs to businesses throughout the United States on quality, process and government environmental standards.  Defendant QAI engages independent contractors to conduct the training programs.  Defendant Deane conducts QAI-related business from his Indianapolis office.  He has never had any real property, office or place of business in Wisconsin.  He has no bank accounts in this state.

Defendant Deane visited Wisconsin on QAI-related business in 2004, when he attended a Registrar Accreditation Board provider meeting.  He has made five trips to Wisconsin for fishing between 2000 and 2005.  Plaintiff was present on three of the trips and the two men discussed QAI.

Defendant QAI conducts some training seminars in Wisconsin each year.  In 2006, for example, it held six seminars here out of more than 500 seminars nationwide.  In 2007, the number was seven out of 623.  For the period 2004 - 2007, Wisconsin generated only 2.5% of its revenues from training programs conducted by defendants.  Plaintiff was an

2

instructor at several of the Wisconsin seminars. Defendants do not sell or use any of its training manuals in Wisconsin except at the training seminars.

From approximately 2003 or 2004 to the present, defendant QAI has been soliciting business and advertising its services in Wisconsin, by sending out post cards and catalogs to Wisconsin customers on its mailing list. Since about the same time, it has been soliciting business and advertising its training programs on its website, www.trainingforquality.com. The website posts the training dates, types of training and costs for QAI seminars at various locations in Wisconsin. Plaintiff has conducted about 19 QAI seminars in Wisconsin in addition to in-house seminars throughout the state. Participants received copies of QAI training materials that plaintiff had written and that QAI copied and assembled for distribution.

Defendant QAI does not have any offices or other facilities in Wisconsin. It is not registered to do business in this state. It has 11 employees, 10 of whom reside in Indiana. One resides in Kentucky. Defendant QAI has a current relationship with 19 subcontractors, none of whom reside in Wisconsin. The only subcontractor defendant has worked with who lives in Wisconsin is plaintiff. Defendant QAI has its only office in Indianapolis; it does not have any property, bank accounts or agents for service in Wisconsin. It does not advertise directly in Wisconsin media and aside from its training programs, its only contact with Wisconsin is a periodic national mailer it sends to a few Wisconsin businesses as well as

3

periodic emails.

The personal discussions defendant Deane had with plaintiff took place in Indianapolis or over the phone. Plaintiff estimates that from 1999 through 2007, he spoke with defendant Deane about three to four times a week; defendant was in Indiana when the calls took place; plaintiff was usually in Wisconsin. From 1999 to 2004, defendants sent plaintiff checks for his services at his home address; after that time, the checks were deposited electronically into plaintiff's bank account. The checks were issued in response to invoices plaintiff had generated in Wisconsin.

Plaintiff has made at least 40 trips to Indiana on QAI-related business, attending semi-annual instructor meetings, conducting training classes at the Indianapolis training center and customer facilities in Indiana. In 2000, defendant Deane met with plaintiff in Brookfield, Wisconsin, to review software that QAI was considering offering for sale.

If this case goes to trial, defendants intend to call 19 witnesses who reside in Indiana and another seven who reside outside Indiana. They would not call as witnesses any Wisconsin residents other than plaintiff.

After defendants moved to dismiss this case, the District Court for the Southern District of Indiana granted a motion by plaintiff to transfer the suit for declaratory judgment that defendants had filed in Indiana before plaintiff filed this case. The court did not discuss jurisdiction or venue before it issued the transfer order; in fact, it said explicitly that it was

taking "no action on the issue of personal jurisdiction over defendant Ziebell or whether venue was properly available in the Southern District of Indiana." It explained that it was applying the usual rule of discouraging races to the courthouse and transferring the case to Wisconsin, where suit had been brought by the "natural" plaintiff, that is, "the party seeking coercive relief rather than only declaratory relief." June 10, 2008 Order. After the case was transferred to this court, defendants Deane and QAI, LLC, dismissed it voluntarily.

OPINION

A. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

In a case in which personal jurisdiction has been put into dispute, the plaintiff bears the burden of making a prima facie showing that jurisdiction exists. Citadel Group Ltd. v. Washington Regional Medical Center, ___ F.3d ___, 2008 WL 2971807, slip op. at 5 (7th Cir. Aug. 5, 2008) (citing Purdue Research Fdn. v. Snofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003)). In determining whether the showing has been made, the court looks to the law of the state in which it sits and considers whether the exercise of jurisdiction is consistent with the defendants' rights to due process. Id.

Wisconsin law on this subject is well developed. Wis. Stat. § 801.05 sets out 13 circumstances in which a court in this state may exercise jurisdiction over a person. For the purposes of this case, only subsections (1) and (5) of § 801.05 have any potential

5

application. (Plaintiff adds subsection (4), but that relates to tortious injuries suffered within the state, Nagel v. Crain Cutter Co., 50 Wis. 2d 638,648-50, 184 N.W.2d 876 (1971); plaintiff has not alleged any tortious wrongdoing by defendants, so I am disregarding it.) Subsection (1) allows courts sitting in Wisconsin to exercise personal jurisdiction over a defendant for any purpose if the defendant was engaged in substantial and not isolated activities within the state at the time the action was filed. The Wisconsin courts use a five-part test to determine whether a defendant's activities come within § 801.05(1): (1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the source of the contacts and their connection with the cause of the action; (4) the interests of the state of Wisconsin; and (5) the convenience of the parties. Nagel, 50 Wis. 2d at 648-50, 184 N.W.2d 876.

At the time plaintiff filed this suit, defendants were soliciting Wisconsin residents to engage QAI to provide training programs and soliciting others to attend the programs. Defendants sponsored a number of training programs in Wisconsin for individual companies and for the public, many of which were taught by plaintiff. Through defendant Deane, defendants had numerous contacts with plaintiff while plaintiff was in Wisconsin. Defendant Deane and plaintiff communicated with each other by telephone, email and regular mail frequently and regularly. Among other things, defendant Deane talked with plaintiff about the materials that plaintiff was preparing for defendants and commented on

6

plaintiff's product. Defendants had a continuing business relationship with plaintiff, which they enhanced with recreational fishing trips that included plaintiff. Stauffacher v. Bennett, 969 F.2d 455, 457-58 (7th Cir. 1992) (inference can be drawn from defendant's continuing business relationship with person within jurisdiction that defendant is benefiting from services provided by state, making it reasonable to subject him to jurisdiction in state's courts) (citing Bruger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985), and Heritage House Restaurants, Inc. v. Continental Funding Group, Inc., 906 F.2d 276, 281-82 (7th Cir. 1985)). Defendants' contacts with the state and with plaintiff meet the first two Nagel criteria (number and nature of contacts).

The third factor is the source of the contacts and their connection with the cause of action. Although this factor seems more appropriate when considering one of the sources of *specific* jurisdiction than in considering whether, under subsection (1) of § 801.05, *general* jurisdiction exists because the defendant is engaged in such substantial and continuous activities as to make it reasonable for him to be subject to suit in this state, plaintiff has made the required showing. Defendants are the source of the contacts and their contacts are closely intertwined with plaintiff's allegation that he was promised a part-ownership of defendant QAI in return for his production of training materials, his advances of payments for the company's benefit and his refraining from seeking reimbursement for expenses he incurred in carrying out QAI work.

7

As to the fourth factor, Wisconsin's interest in the case, it is too early to say whether plaintiff can prevail on his claim that defendants breached a contractual relationship with him, but his allegations are sufficient to engage the interests of the state. Wisconsin has a stake in insuring that its citizens' rights are protected.

The fifth factor is the convenience of the parties, a factor that seems to be more appropriately considered in connection with a motion for a change of venue. "'Convenience' is a factor which should never be decisive in determining jurisdiction, although it may lead a court to decline to exercise its jurisdiction." Nagel, 50 Wis. 2d at 650; 184 N.W.2d at 882. I will consider this factor in connection with defendants' alternate motion for a change of venue. I conclude, however, that plaintiff has made the necessary showing with respect to personal jurisdiction under subsection (1) of § 801.05.

Subsection (5) of § 801.05 provides a possible source of specific jurisdiction. It covers circumstances relating to local services, goods or contracts. Two subsections of this subsection are relevant: subsection (a), which applies to actions that arise "out of a promise, made anywhere to the plaintiff or to some 3d party for the plaintiff's benefit . . . to pay for services to be performed in this state by the plaintiff"; and (b), which applies to actions that arise "out of services actually performed . . . for the defendant within this state if such performance within this state was authorized or ratified by the defendant."

Plaintiff has alleged that defendants promised him a particular "payment" in return

8

for his production of materials: an ownership share of defendant QAI. The parties understood that plaintiff would do the work for defendants in Wisconsin and that he completed the work for which he was promised payment. Thus, it would be proper to exercise personal jurisdiction over defendants under either subsections (a) or (b) of § 801.05(5).

When defendant Deane visited Wisconsin and when he talked with plaintiff on the telephone, he was not acting simply as an agent of defendant QAI; he *was* QAI. He is the sole owner of the company, which is a limited liability company. Even if he had been acting as an agent, his contacts are considered in determining whether defendants have made the minimum contacts required for personal jurisdiction. Druschel v. Cloeren, 2006 WI App 190, ¶ 15, 295 Wis. 2d at 858, 723 N.W.2d 430 ("fiduciary shield" doctrine has not been adopted in Wisconsin) (citing Norkol/Fibercore, Inc. v. Gubb, 279 F. Supp. 2d 993, 998 (E.D. Wis. 2003)).

The next question is whether exercising personal jurisdiction over defendants would violate their due process rights under the United States Constitution. I conclude that it would not. Defendants purposefully established minimum contacts in the state when they worked with plaintiff on the production of training documents and talked and met with him on a regular basis. Having done so, they could reasonably have anticipated that they might be haled into a court in this state. Burger King, 471 U.S. at 474. The prior conclusion that

9

defendants are subject to jurisdiction under Wisconsin's long-arm statute bolsters this determination. That conclusion creates a rebuttable presumption that federal due process is satisfied as well. Druschel, 2006 WI App 190, ¶ 13 (citing Harley-Davidson Motor Co. v. Motor Sport, Inc., 960 F. Supp. 1386, 1391 (E.D. Wis. 1997)).

Exercising personal jurisdiction over defendants comports with fair play and substantial justice. Burger King, 471 U.S. at 476. Wisconsin has an interest in adjudicating the dispute between one of its citizens and the persons alleged to have violated their contract with him; plaintiff has a strong interest in obtaining convenient and effective relief for the alleged wrong he has suffered; the burden on defendants is not so heavy as to be unfair, even if they would prefer to litigate close to home; the judicial system has an interest in obtaining the most efficient resolution of controversies; and both Indiana and Wisconsin share an interest in furthering fundamental substantive social policies. Id.

### B. Defendants' Motion for Transfer of Venue

Although I have found that it would be constitutional to exercise personal jurisdiction over defendants, I must consider their alternate motion for a change of venue under 28 U.S.C. § 1404(a), and with it, the convenience of the parties. A court will transfer a case under this section if the transferee forum is clearly more convenient. Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir. 1986).

The first consideration is the convenience of the parties, with added weight going to plaintiff, because he chose the forum. Defendants argue that this is not true when the chosen forum is not the situs of the material events; in this case, the alleged material events *must* have occurred in Indiana. This, they say, makes that state clearly more convenient because witnesses and documentary materials would be there. Defendants may or may not be correct. It seems likely that the conversations between the parties will be highly relevant, but if the crucial conversations were by telephone or in person between plaintiff and defendant Deane, with no witnesses, the balance does not tip one way or another. In any event, if there is documentary evidence in Indiana, both paper and electronic records are easy to transport.

The second consideration is the convenience of witnesses. On this point, the equities are unclear. Defendants have named a large number of witnesses, most of whom are Indiana residents, but plaintiff takes issue with the legitimacy of the list. He contends that many of the people on the list know nothing about his negotiations with defendant Deane about ownership of QAI. This may be true, but it is probable that at least some of the witnesses will have relevant testimony about the actions that defendants took that bear on their apparent understanding that a contract existed between the parties. Of those witnesses who did not work for defendants, none would be subject to the subpoena power of this court. By contrast, plaintiff has not suggested that he has *any* witnesses other than himself that are

11

Wisconsin residents.

In considering the interests of justice, it is proper to give weight to the fact that the court in Indiana is better equipped to decide this case, which will probably be decided under Indiana law. Although it is yet to be determined whether the parties did have a contract, the likelihood is that if they did, it is governed by Indiana law. The subject of the alleged contract is the ownership of an Indiana limited liability company, whose rights and responsibilities are set by Indiana law. Also, if the parties had a contract, any breach would have occurred in Indiana, where the company and defendant Deane are located.

Accordingly, I conclude that although this court could exercise personal jurisdiction over defendants, the convenience of the parties and the interests of justice militate in favor of transferring this case to the Southern District of Indiana under 28 U.S.C. § 1404(a).

ORDER

IT IS ORDERED that the motion filed by defendants Craig Deane and QAI, Inc. to dismiss this case for lack of personal jurisdiction is DENIED. Defendants' alternative motion to transfer venue is GRANTED and this case is transferred to the United States District Court for the Southern District of Indiana. The clerk of court is directed to transmit

the case file promptly to that court.

Entered this 20th day of August, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge